UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

QUENTIN EARL BOOTH,

          Defendant.

No. 1:23-CR-153

Hon. Hala Y. Jarbou

**DEFENDANT'S SENTENCING MEMORANDUM**

Quentin Booth requests the Court to consider the following information regarding the imposition of sentence in his case, set to take place on June 25, 2024, at 9:00 a.m. We have reviewed the final presentence report ("PIR") and we have one objection to the scoring of the sentencing guidelines, detailed in an accompanying memorandum. Currently, the advisory guideline range as scored in the PIR is 84 to 105 months imprisonment and the recommended sentence is 90 months. If the Court sustains our objection to the guideline scoring, the advisory range of imprisonment would be 57 to 71 months imprisonment. By this memorandum, Mr. Booth presents information to the Court regarding the 18 U.S.C. § 3553(a) factors. He asks for a low sentence that is not greater than necessary and asks the Court to consider a downward variance from the guideline range, particularly if the guideline range is determined to be 84 to 105 months imprisonment.

A. <u>Sentencing Factors</u>

As the Court is well aware, the relevant sentencing factors are found in 18 U.S.C. § 3553, and the standard is that a sentence be "sufficient, but not greater than necessary," to comply with the multiple purposes of sentencing found in § 3553(a)(2). In determining the appropriate sentence, the Court will consider the "nature and circumstances of the offense and the history and characteristics of the defendant" and the "need for the sentence imposed to "(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1-2). The Court is also instructed by statute to consider the: (3) kinds of sentence available; (4) the kinds of sentences and the sentencing guideline range for the offense; (5) any pertinent policy statement regarding the sentencing guidelines; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(3-7).

It is solely the Court's function to assess, weigh and resolve these factors. We amplify here some things for the Court's consideration regarding those factors.

1. <u>The Nature and Circumstances of the Offense</u>

We are sending the Court surveillance video so it can see exactly what happened here. Exhibit A (Mr. Booth is the male wearing the white t-shirt). The descriptions in the PIR do not really capture the entire story and are a little bit confusing.

Mr. Booth, his girlfriend Staci Lang, D.S. (see ¶ 5) and two women related to D.S. went to a convenience store in Lansing. Ms. Lang was the driver and others in the group, including Mr. Booth, had been drinking. Ms. Lang was the legal owner of two firearms, a rifle purchased by her on September 1, 2023, and a 9 mm handgun purchased by her on March 31, 2023. PIR, RE33, ¶¶ 13, 14, PageID110. As can be seen on the video in Exhibit A, when the group arrived and parked outside of the convenience store, D.S. carried the rifle openly into the store. Mr. Booth was carrying the 9 mm handgun in his pocket.

Once inside the store, also depicted in the video, Mr. Booth removed the rifle from D.S.'s hands to secure it. The group purchased some items and left the store. D.S. left carrying the rifle. Mr. Booth and Ms. Lang left. Mr. Booth still had the 9 mm handgun in his pocket. They walked back out to Ms. Lang's car. Mr. Booth again removed the rifle from D.S.'s hands to secure it in the car, and also put the 9 mm handgun back in the car. The group was going to leave but someone had called police due to D.S.'s behavior with the rifle – he had been waving it around in the store. The police arrived and detained Mr. Booth. Mr. Booth was compliant with police

3

commands and immediately admitted he had handled the guns that were legally owned by Mr. Lang.  PIR, RE33, ¶ 11, PageID110.

The offense behavior is obviously serious and when the Court sees the videos, it will probably come to the conclusion that the offense behavior was also somewhat ridiculous.  The guns were not being used to threaten anyone.  But the rifle was being handled on the street and in the store in a careless manner that had the potential to be dangerous.  Mr. Booth has acknowledged the seriousness of the offense and his gratitude that no one was injured.  PIR, RE33, ¶ 21, PgeID112.

    2. <u>The History and Characteristics of the Defendant</u>

Mr. Booth has approached this case with maturity and has taken responsibility for it.  As noted above, he readily admitted his behavior to the police and cooperated with them on the night of the incident.  He was arrested and posted bond pending state charges.  PIR, RE33, ¶6, PageID108.  He was faithful to his bond conditions in the state case until he was arrested and detained federally on December 21, 2023.  He was the first to plead guilty in this matter.  *Id.*, ¶ 5, PageID108.

Mr. Booth's statement of responsibility in the PIR also shows acceptance, maturity, regret, introspection as to how he should have behaved differently and ideas about how he will better himself during his custodial term.  PIR, RE33, ¶¶ 20-26, PageID112-113.

Mr. Booth's background shows that he was raised in an environment that was unstable and he experienced some abuse.  PIR, RE33, ¶¶ 96-98, PageID127.  But he has been in a stable relationship with Ms. Lang since 2020, and also that year made

4

a conscious effort to reestablish relationships with his children. *Id.*, ¶¶ 99, 101, PageID127-128. 2020 was also the last year he had a new criminal case against him before this one. *Id.*, ¶ 82, PageID124. These are positive developments for him and evidence that he has been ready to enter a new phase of his adult life that is less chaotic. Mr. Booth was under the influence of alcohol at the time of this offense and agrees that he could benefit from substance abuse treatment. *Id.*, ¶¶ 111-113, PageID129-130.

    3. <u>The Guidelines</u>

The guidelines account for the most troubling features of this case: Mr. Booth's status as a felon, the types of weapons involved and the criminal history. There are admittedly a lot of entries in Mr. Booth's criminal history, much of it minor, and most of the more serious crimes score points putting him in a criminal history category of V. All but one of his prior sentences were sentences to probation, county jail, fines and costs or some combination of those. Only the 2017 Armed Robbery – Attempt carried a prison sentence of 15 to 60 months.

    4. <u>To provide or vocational training</u>

Mr. Booth would like to learn a trade while in prison and would like to participate in substance abuse treatment. PIR, RE33, ¶ 35, 112, PageID113, 130.

B. <u>Request for Variance</u>

Mr. Booth asks the Court to consider a downward variance from the guidelines, particularly if the guidelines remain at 84 to 105 months imprisonment. First, he would again note that he immediately admitted his actions to the police in handling

the guns which can be juxtaposed with the way questioning by police was handled by others in this matter who falsely denied handling a firearm. *See* PIR, RE33, ¶ 12, PageID110. The Court could reward Mr. Booth's candor with police with a downward variance to encourage this type of acceptance, not only for him but for others.

Second, the 9mm handgun Mr. Booth carried in his pocket had a magazine with a 17-round capacity so it qualifies as a "large capacity magazine" under § 2K2.1, Application Note 2, defined as a firearm with a magazine capable of accepting more than 15 rounds. The rifle that he handled briefly to secure it from D.S. had a 30-round capacity. We do not dispute that the large capacity magazine enhancement applies. However, the "large" capacity number of 15 rounds is arbitrary and "many pistols may ship with magazine sizes ranging from 5 to 20 rounds, and common self-loading rifles have as standard magazine capacity of between 20 and 30 rounds." *Bevis v. City of Naperville*, 85 F.4th 1175, 1215 (7thCir. 2023) (citing David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 ALB. L. REV. 849, 874 (2015) for the proposition that "[i]t is indisputable in the modern United States that magazines of up to thirty rounds for rifles and up to twenty rounds for handguns are standard equipment for many popular firearms" and "[t]he most popular rifle in American history is the AR-15 platform, a semiautomatic rifle with standard magazines of twenty or thirty rounds"). Because of that, we ask the Court to consider that the magazine here was not greater than what is typical and standard, making the large capacity magazine increase in the base offense level – effectively two-levels – greater than necessary to reflect the seriousness of Mr. Booth's offense

6

warranting a downward variance.

WHEREFORE, we ask the Court to take the above into consideration and impose a low sentence that is not greater than necessary.

                                                                  Respectfully Submitted,

Date:  June 11, 2024                       WILLEY & CHAMBERLAIN LLP
                                                       Attorneys for Defendant Booth

                                                         s/ Britt M. Cobb
                                                      _____
                                                      Britt M. Cobb (P69556)

                                                      300 Ottawa Avenue, N.W., Suite 810
                                                      Grand Rapids, Michigan 49503
                                                      (616) 458-2212
                                                      bmc@willeychamberlain.com